STEVE ELZINGA
Oregon Bar No. 123102
SHERMAN, SHERMAN, JOHNNIE & HOYT, LLP
693 Chemeketa St. NE
Salem, OR 97301
Telephone: 503-364-2281
steve@shermlaw.com

Attorneys for Plaintiffs
PEOPLE NOT POLITICIANS OREGON,
COMMON CAUSE, LEAGUE OF WOMEN
VOTERS OF OREGON, NAACP OF
EUGENE/SPRINGFIELD, INDEPENDENT
PARTY OF OREGON, and C. NORMAN
TURRILL

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| PEOPLE NOT POLITICIANS OREGON, COMMON CAUSE, LEAGUE OF WOMEN VOTERS OF OREGON, NAACP OF EUGENE/SPRINGFIELD, INDEPENDENT PARTY OF OREGON, and C. NORMAN TURRILL,<br><br>  Plaintiffs,<br><br>  v.<br><br>BEVERLY CLARNO, OREGON SECRETARY OF STATE,<br>  Defendants. | Case No. 20-01053-MC<br><br>**DECLARATION OF TED BLASZAK IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER** |

1
DECLARATION OF TED BLASZAK IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY
RESTRAINING ORDER (*People Not Politicians, et al. v. Beverly Clarno, Secretary of State*)
1386657

I, TED BLASZAK, declare that:

1.I am the president and owner of Initiative and Referendum Campaign Management Services (IRCMS), and have been since 2000. I have been managing political campaigns since 1985. IRCMS has qualified 75 initiatives for the ballot in 14 states, including Oregon. Through IRCMS, I have qualified 20 measures for the ballot in Oregon. I have been active in Oregon politics and campaigns since 1998.

2.I began discussions in the summer of 2019 with the organizers of what became the People Not Politicians (PNP) campaign to qualify Initiative Petition (IP) 57 for the 2020 general election ballot.

3.From my experience in Oregon campaigns, I know that, to traditionally qualify a statewide ballot measure, its organizers must have public support, adequate financing, in-person access to potential petition signers, endorsers, donors, and volunteer support. As early as February 2020, all these factors were positive, or trending positive, for the PNP campaign. With these factors, I have facilitated and qualified several Oregon ballot measures whose signature-gathering efforts have begun later than April 9. Campaigns seeking to qualify their measures for the ballot by signature-gathering campaigns have successfully gathered and submitted qualifying signatures to the Oregon Secretary of State in shorter periods of time than the April 9-July 2, 2020, period available to the PNP campaign.

4.In a traditional signature-gathering campaign, petition circulators (signature gatherers)—armed with clipboards, petitions, and pens—typically operate in high-traffic public spaces. The most efficient locations for collection are those where a large number of people concentrated in a small area, such as public transit stations, shopping centers, farmers markets, libraries, fairs, rallies, parades, and concerts. Inevitably, in-person signature collection depends

2

on conversing with strangers in close quarters, while passing around clipboards, sheets, and pens. To qualify initiatives for the ballot, using paid circulators produces a superior result to the use of volunteer circulators, because paid circulators dedicate more time to this activity than volunteer circulators. Face-to-face, in-person communication with a potential petition signer is optimal.

5. In my opinion, the PNP campaign faced a perfect storm of adverse consequences starting in mid-March 2020, beginning with the Governor's Executive Orders successively restricting and then eliminating, for all practical purposes, the until-now standard, accepted, and successful method of collecting signatures in person.

6. PNP's 500,000-piece signature solicitation mailed in late May was one of the few that ever attempted this signature-gathering strategy for an initiative in Oregon. This strategy has never succeeded in Oregon political history for a statewide initiative.

7. In PNP's mail signature-soliciting campaign, the statistics were excellent—six percent of all households returned signatures on the five-line signature sheet included in the mailing, which also included a postage-paid preaddressed envelope (PPPAE). The returned PPPAE contained petitions with an average of two signatures.

8. Despite the Executive Orders, the PNP campaign's non-PPPAE returns were also good. I worked in a previous signature-gathering effort with partners and coalitions similar to PNP's—the American Association of University Women, the League of Women Voters, and Common Cause. In the prior campaign, those groups, without the hindrance of any Executive Orders comparable to those of the spring of 2020, were able to produce approximately 20,000 signatures. In the PNP campaign, measured by the number of non-PPPAE envelopes returned, the volunteer circulators produced approximately 4,000 signatures.

9.      Based upon my experience in Oregon signature-gathering campaigns, using normal in-person signature collection efforts, my clients in Oregon ballot measure campaigns received an average of 15,000-20,000 signatures per week. Under normal signature-gathering circumstances, including adequate financial, public, and volunteer support, an initiative campaign could have collected and submitted to the Oregon Secretary of State at least 150,000 valid signatures between April 9 and July 2, 2020.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  June 30, 2020

s/ Ted Blaszak

TED BLASZAK