**Steven C. Berman**, OSB No. 951769
Email:  sberman@stollberne.com
**Lydia Anderson-Dana**, OSB No. 166167
Email:  landersondana@stollberne.com
STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. Oak Street, Suite 500
Portland, Oregon 97204
Telephone:      (503) 227-1600
Facsimile:       (503) 227-6840

Attorneys for Our Oregon and Becca Uherbelau

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| PEOPLE NOT POLITICIANS OREGON, COMMON CAUSE, LEAGUE OF WOMEN VOTERS OF OREGON, NAACP OF EUGENE/SPRINGFIELD, INDEPENDENT PARTY OF OREGON, and C. NORMAN TURRILL,<br><br>Plaintiffs,<br><br>v.<br><br>BEVERLY CLARNO, OREGON SECRETARY OF STATE,<br><br>Defendant. | Case No. 6:20-cv-01053-MC<br><br>DECLARATION OF BECCA UHERBELAU |

I, Becca Uherbelau, declare as follows:

1.      I am the Executive Director of Our Oregon and an Oregon elector.

2.       Our Oregon is a public benefit nonprofit corporation organized under section 501(c)(4) of the Internal Revenue Code and registered with the Oregon Secretary of State.  Our Oregon is dedicated to fighting for economic and social justice for all Oregonians.  Our Oregon's

Page 1 -      **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 1 of 8

primary mission is to educate the public about public services, to advocate for stable, adequate and fair funding for public services, and to fight for justice for all Oregonians. Our Oregon also works to protect the integrity of the initiative system and promote equitable access to the ballot. The rights of Oregonians, and funding for public services, are perennial topics of statewide ballot measures. Accordingly, in fulfilling its mission, Our Oregon has a strong interest in the initiative and ballot measure processes. Our Oregon, through its executive director and staff, frequently comments on draft ballot titles for statewide initiative petitions and subsequently challenges ballot tiles for initiative petitions before the Oregon Supreme Court. As part of the comment process, Our Oregon, through its executive director or staff, provides input as to whether an initiative petition complies with the procedural requirements of the Oregon Constitution.

3. Our Oregon serves as a watchdog regarding initiative petitions it opposes (and did so under Mr. Unger's tenure as Executive Director as well). In its watchdog capacity, Our Oregon monitors initiative petition circulation and signature gathering. Our Oregon staff, coalition members and other volunteers observe signature verification conducted by the Secretary of State, to ensure that submitted initiative petitions have sufficient valid signatures to qualify for the ballot and to watch out for any potential fraud and abuse or misuse of the initiative system.

4. Our Oregon is opposed to IP 57 and would lead, or be part of, any campaign to defeat IP 57 if it were to qualify for the November 3, 2020 General Election ballot. I filed timely comments on the draft ballot title for IP 57 and subsequently challenged that ballot title before the Oregon Supreme Court. I also am a plaintiff in a separate action in Marion County circuit court, *Uherbelau v. Clarno*, No. 20CV13939 (Or. Cir. Ct. Mar 27, 2020), in which I allege that IP 57 does not comply with the procedural requirements of the Oregon Constitution and may not

Page 2 -    **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 2 of 8

appear on the ballot. Cross-motions for summary judgment in that case have been filed, but have not yet been fully briefed or decided.

5. Since mid-2018, I have overseen Our Oregon's statewide ballot initiative work. I also have been involved with and overseen Our Oregon's watchdog efforts in monitoring signature collection, turn-in and verification for statewide initiative petitions and referenda, including IP 57 (2020). As a result, I am quite familiar with how a viable initiative petition signature campaign – capable of qualifying an initiative petition – would be organized and run.

6. I have reviewed the declarations filed by Plaintiffs in this case as well as information publicly available on the Oregon Secretary of State's website. Based on that review, I conclude that the signature collection campaign for IP 57 was insufficient to qualify IP 57 for the 2020 General Election ballot, and that social distancing and other limitations resulting from the pandemic are *not* the reason the campaign was unable to collect sufficient signatures. That conclusion is based on the factors discussed below.

7. An effective initiative petition campaign would show a sustained increase, or at least a steady stream, of funding to support an effective signature gathering campaign. However, financial reports in ORESTAR reveal that the IP 57 campaign had no such funding. Rather, the data on ORESTAR reveals that the IP 57 campaign spent funds on only one campaign tactic - to have petitions printed and mailed. There is no evidence of expenditures for an effective campaign operation including, for example, a robust field program or a digital organizing or other paid communication and engagement strategy. According to ORESTAR, IP 57 reports having raised only around $600,000. In contrast, two other initiative petitions that have qualified or turned in more than enough signatures to qualify for the 2020 ballot, IP 34 and IP 44, raised and spent over $900,000 and $2.1 million, respectively, during the qualification period. Initiative

Page 3 -   **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 3 of 8

petitions that qualified in the 2018 election cycle similarly raised and spent more that IP 57.  For example, IP 31 [Measure 104] spent over $1 million and IP 37 [Measure 103], a proposed constitutional amendment, spent over $2.2 million during the qualification period. (Two other initiative petitions that did manage to qualify for the 2018 ballot while raising less money than IP 57 were both filed way earlier than IP 57, as discussed in paragraph 8, below.) (This information discussed in this paragraph and in the subsequent paragraphs of my declaration is all available from the publicly accessible database ORESTAR on the Secretary of State's website at https://sos.oregon.gov/elections/Pages/campaignfinance.aspx and from the Secretary of State's Initiative, Referendum and Referral database, also on the Secretary of State's website, available at http://egov.sos.state.or.us/elec/web_irr_search.search_form).  Given that IP 57 had to obtain almost 150,00 valid signatures, its funding was wholly inadequate.

      8. IP 57 filed its initiative petition unreasonably late in the election cycle.  As is discussed in Mr. Unger's declaration, an initiative campaign will face substantial challenges if the initiative is filed later in the election cycle.  IP 57 was filed very late, in November 2019.  Both IP 34 and IP 44 were filed months earlier.  Additionally, each of the measures that qualified for the ballot in 2018 (when signature requirements were lower), was filed earlier in that election cycle than IP 57 was filed during this election cycle.  IP 1 (2018) [Measure 106] was filed in June 2016, just over two years before the signature deadline.  IP 22 (2018) [Measure 105] was filed in April 2017, over fourteen months before the signature deadline.  IP 31 (2018) [Measure 104] was filed in September 2017; and IP 16 (2018) [Measure 103] was filed in October 2017.  While IP 37 (2018) was filed just a month earlier in the 2018 cycle than IP 57, the IP 37 campaign had significantly more resources – roughly $1.7 million more than IP 57 – to spend during the qualification period.

Page 4 -    **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 4 of 8

9. Mr. Blaszak's assertion that he could have organized a signature collection effort to obtain sufficient signatures to qualify IP 57 for the ballot "under normal signature-gathering circumstances" is suspect and not supported by Mr. Blaszak's own failed signature collection efforts. For example, during the 2010 election cycle, Mr. Blaszak's then-company NW Democracy Resources, conducted the paid-signature collection effort for IP 76, a constitutional amendment to allow casino gambling in Oregon. Although that initiative campaign spent over $750,000 (in 2010 dollars) and had over three months to collect signatures, Mr. Blaszak failed to obtain sufficient signatures for the initiative to qualify. This fact is inconsistent with Mr. Blaszak's sworn statement, in paragraph 9 of his declaration, that "[b]ased upon my experience in Oregon signature-gathering campaigns, using normal in-person signature collection efforts, my clients in Oregon ballot measure campaigns received an average of 15,000-20,000 signatures per week." For IP 76, Mr. Blaszak's experience fell far short of his sworn assertion. For IP 76, with over fourteen weeks, Mr. Blaszak's campaign was unable to collect the 110,358 signatures to qualify that measure; his campaign's efforts fell well below 8,000 valid signatures per week.

10. Based on the reported rate of return on IP 57's mail-in signature collection effort, it further appears that IP 57 lacked the necessary public support to qualify for the ballot. Mr. Blaszak reports that 6% of all households that were mailed an IP 57 signature sheet returned the sheet. He considers this "excellent." He does not state how many of those sheets were properly completed or contained valid signatures, which could impact – potentially significantly – the validity rate. However, based on our experience, that return rate is mediocre. During the 2018 election cycle, Our Oregon ran a test signature-collection direct mail program for IP 25: we had a rate of return of 8.47% after validating the signatures, a rate over 25% higher than IP 57's. The low rate of return for IP 57 indicates the public does not significantly support IP 57.

Page 5 -    **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 5 of 8

11. There is another significant factual inaccuracy recurring throughout the Plaintiffs' declarations and court papers. First, the Plaintiffs repeatedly state that during the governor's stay-at-home order, they were prohibited from collecting signatures. That is not true. Nothing in the Governor's stay-at-home orders prohibited signature collection. Moreover, by May 15, 2020, 36 of Oregon's 39 counties had moved to "phase-two," where restrictions on social interaction were further reduced. The campaign had over six weeks to collect signatures in-person, using paid circulators during phase two, but opted not to do so.

12. The Plaintiffs ask the Court to reduce the constitutionally mandated signature qualification threshold for IP 57 and to extend the constitutionally mandated signature filing deadline. These are the requirements that every initiative petition in Oregon has been required to meet – including initiative petitions filed in this election cycle. An organized, funded and well-run campaign could have met those deadlines. The pandemic does not excuse the failure of IP 57 to qualify for the ballot. The chief petitioners for IP 57 started too late, did not have enough money, did not have a groundswell of voter support and did not have a well thought-through strategy. It would be unfair to all other participants in the initiative process if a special standard were created for IP 57, especially given that the campaigns for IP 34 and IP 44 were both able to qualify their initiatives. And it would be a disservice to Oregon voters who adopted and enshrined Oregon's initiative system into our constitution.

13. Allowing the Chief Petitioners to submit after the constitutional deadline (and at a lower threshold) would make it exponentially more difficult for Our Oregon, or anyone else, to organize an opposition campaign to IP 57. It takes months to build and fund a coalition in opposition to a ballot measure. While IP 57 has garnered significant opposition from a broad coalition of organizations (including voting and immigrants' rights groups), getting advocates to

Page 6 - **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 6 of 8

coalesce and fight an initiative petition is a complex process. We are now less than four months away from the November 2020 General Election. In less than two months, voters' pamphlet statements are due and explanatory statements must be drafted. The Financial Estimate Committee (which prepares a statement of the estimated costs for initiative petitions that appear on the ballot) has already begun meeting, and IP 57 was not placed on the agenda because signatures were not submitted by the constitutional deadline. The filing deadline in the Oregon Constitution provides advocates with the necessary time to know if they need to prepare for an election contest. Delay unfairly prejudices their rights.

14. Finally, if the Plaintiffs were able to obtain the relief that they seek here, that would dramatically alter the initiative process landscape moving forward. Proponents seeking to qualify initiatives in the future would seek their own exceptions to the requirements set in the Oregon Constitution, which would significantly impact how campaigns to qualify initiative petitions would be run and would seriously undermine the integrity of our voter-approved initiative system. Initiative petition campaigns are expensive, and increasingly so in the current era. A highly contentious statewide initiative campaign can run well over $10 million. Lowering or reducing the qualification standards – as the Plaintiffs demand – would unfairly impose costs and financial burdens on IP 57's opponents. Those opponents should be able to reasonably rely on the signature thresholds and deadlines in the Oregon Constitution as a necessary filter to prevent initiative petitions that lack widespread public support – such as IP 57 – from qualifying for the ballot.

Page 7 -    **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 7 of 8

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 8th day of July, 2020.

s/ Becca Uherbelau
Becca Uherbelau

Page 8 -   **DECLARATION OF BECCA UHERBELAU**

STOLL STOLL BERNE LOKTING & SHLACHTER P.C.
209 S.W. OAK STREET, SUITE 500
PORTLAND, OREGON 97204
TEL. (503) 227-1600   FAX (503) 227-6840

Exhibit B
Page 8 of 8