**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

SEP 1 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PEOPLE NOT POLITICIANS OREGON; et al., | No.   20-35630 |
| Plaintiffs-Appellees, | D.C. No. 6:20-cv-01053-MC |
| v. | MEMORANDUM[*] |
| BEVERLY CLARNO, Oregon Secretary of State, | |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Michael J. McShane, District Judge, Presiding

Argued and Submitted August 13, 2020
Anchorage, Alaska

Before: RAWLINSON, MURGUIA, and R. NELSON, Circuit Judges.
Dissent by Judge R. NELSON

People Not Politicians Oregon ("PNP") seeks to place an initiative on the

November 2020 ballot that would amend the Oregon Constitution to create a

redistricting commission for the state (the "Initiative").  To place the Initiative on

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

the ballot, the Oregon Constitution requires PNP to file a petition with the Oregon Secretary of State signed by eight percent (8%) of eligible voters in the last gubernatorial election (the "Signature Requirement") no less than four months before the November election (the "Deadline Requirement").  Or. Const. art. IV, §§ 1(2)(a), (e).  Therefore, to place the Initiative on the November 2020 ballot, PNP was required to submit 149,360 signatures by July 2, 2020.  The Secretary of State, Beverly Clarno, then has until September 3, 2020 to file the finalized ballot with each county's clerk.

On June 30, 2020, PNP sued Oregon Secretary of State Beverly Clarno, alleging that Clarno's strict enforcement of the Signature and Deadline Requirements during the COVID-19 pandemic violates the rights of PNP's members to engage in core political speech and to associate with others for political purposes under the First Amendment of the United States Constitution.  PNP also asked the district court to enjoin Secretary Clarno from enforcing the Signature and Deadline Requirements by lowering the signature threshold and postponing the July 2, 2020 deadline.

On July 10 and 13, 2020, the district court issued a preliminary injunction of the Signature and Deadline Requirements, requiring Secretary Clarno to either (1) allow PNP's Initiative on the ballot with the signatures gathered as of the day of the

2

injunction, or (2) reduce the signature threshold to 58,789 signatures and extend the deadline to gather signatures until August 17, 2020.

On August 11, 2020, the Supreme Court stayed the district court's preliminary injunction pending disposition of this appeal "and disposition of the petition for a writ of certiorari, if such writ is timely sought." *Clarno v. People Not Politicians*, No. 20A21, 2020 WL 4589742, at *1 (U.S. Aug. 11, 2020). The practical effect of the stay is that even if we affirm the district court's injunction, the Supreme Court is not likely to lift the stay until after the September 3, 2020 deadline to place the Initiative on the November 2020 ballot, likely rendering this action moot as to this election cycle.

"We review questions of mootness de novo." *United States v. Hulen*, 879 F.3d 1015, 1018 (9th Cir. 2018). We have jurisdiction under 28 U.S.C. § 1292(a)(1), and we remand for further proceedings.

"Generally, a case is rendered moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1013 (9th Cir. 2002) (quoting *Schaefer v. Townsend*, 215 F.3d 1031, 1033 (9th Cir. 2000)). However, "a court is not precluded from exercising jurisdiction over an otherwise moot case where . . . the case is 'capable of repetition, yet evading review.'" *Id.* With this in mind, the Supreme Court has long established that courts "may exercise jurisdiction over [a challenge

to an electoral restriction] if '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)).  Accordingly, the Supreme Court and our circuit have decided the merits of numerous challenges to electoral restrictions after the elections took place because "[t]he short span of time between the filing deadline and the election makes [ ] challenge[s to election restrictions under the First Amendment] evasive of review." *Rubin*, 308 F.3d at 1013 (quoting *Schaefer*, 215 F.3d at 1033)).[1]

In *Meyer*, for example, the Supreme Court struck down Colorado's ban on paid circulators *after* the election period at issue.  486 U.S. at 417 n.2, 428.  The Court reasoned that (1) it was unlikely that the plaintiffs could obtain a favorable ruling within the six-month period to gather signatures to place an initiative on the ballot in Colorado, and (2) the plaintiffs continued to advocate for the initiative's adoption and would attempt to obtain the necessary signatures to place the initiative on the ballot in future elections.  *Id.* at 417 n.2.  At oral argument, PNP's counsel

---

[1] *See, e.g.*, *Norman v. Reed*, 502 U.S. 279, 288 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 784 n.3 (1983); *Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974); *Ariz. Green Party v. Reagan*, 838 F.3d 983, 987–88 (9th Cir. 2016); *Rubin*, 308 F.3d at 1012; *Schaefer*, 215 F.3d at 1033.

confirmed that, like the plaintiffs in *Meyer*, PNP will attempt to gather the necessary signatures to place the Initiative on the November 2022 ballot if the Supreme Court does not lift its stay in time to place it on the November 2020 ballot.  Therefore, we must evaluate whether "it is reasonable to expect that the same controversy will recur between [PNP and Secretary Clarno], yet evade meaningful judicial review" if the pandemic continues unabated leading up to the next election cycle.  *Meyer*, 486 U.S. at 417 n.2.

However, this mootness issue only arose on appeal as a result of the Supreme Court's recent stay of the district court's injunction, and the parties did not have an opportunity to brief or develop the record below on whether it is reasonable to expect that the same controversy will recur leading up to the November 2022 election. Because the district court is better positioned to evaluate factual nuances and disputes, we remand to allow the parties to develop the record and brief the district court on whether this controversy is "capable of repetition, yet evading review," and so the district court can decide this issue in the first instance.

**REMANDED with instructions.**[2]  Each party shall bear its own costs.

---

[2] Our colleague dissents and invites us to "revisit [our] jurisprudence regarding ballot initiatives."  We do not find it necessary to reach the merits, however, because we are remanding this action for the district court to determine whether the controversy between the parties is capable of repetition yet evading review.

FILED

SEP 1 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

*People Not Politicians Oregon v. Clarno*, No. 20-35630
R. NELSON, Circuit Judge, dissenting:

I respectfully dissent from our decision to remand this case with any

suggestion it is not or will not become moot.  Given the Supreme Court's recent

stay of the district court's order, *Clarno v. People Not Politicians Or.*, No. 20A21

(U.S. Aug. 11, 2020) (order granting application for stay), the preliminary

injunction is either moot or will become moot by September 3, 2020.  Since our

courts cannot provide any meaningful relief as to the preliminary injunction before

that date, I would vacate the district court's order and remand with instructions to

dismiss this appeal as prudentially moot.  *See Deutsche Bank Nat'l Tr. Co. v.

FDIC*, 744 F.3d 1124, 1135 (9th Cir. 2014).  Otherwise, I would vacate and

remand with instructions to dismiss as moot under Article III on September 3.

Any suggestion the preliminary injunction may not be moot is meritless.

This appeal presents no "exceptional situation[]" justifying an exception to

mootness.  *See Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836–37

(9th Cir. 2014) (citation omitted); *City of Los Angeles v. Lyons*, 461 U.S. 95, 109

(1983).  Though the unique confluence of factors giving rise to this as-applied

challenge may occur again, even a possibility is not enough to constitute a

"reasonable expectation" or "demonstrated probability" that "the same controversy

will recur involving the same complaining party."  *See FEC v. Wis. Right to Life,

Inc.*, 551 U.S. 449, 463 (2007) (internal citations omitted).  It may be possible for

1

the district court to address Appellees' legal contentions in the claim for declaratory relief pending before that court, but as the to claim for preliminary injunction on appeal before us, there is no exception to mootness.  Indeed, it is unprecedented to allow a preliminary injunction to survive mootness when the sought-for equitable relief is no longer available.  The district court has no choice but to dismiss this preliminary injunction claim as moot after September 3.

Finally, I write separately to highlight our circuit's decision in *Angle v. Miller*, 673 F.3d 1122 (9th Cir. 2012), and its potential incongruity with established First Amendment principles as recently signaled by four justices of the Supreme Court.  *See Little v. Reclaim Idaho*, No. 20A18, 591 U.S. ___ (Jul. 30, 2020) (Roberts, C.J., concurring).  Though we do not reach the merits of this issue here, I recommend reviewing *Angle* en banc in a future case.

# I

In this litigation, Appellees People Not Politicians Oregon, Common Cause, League of Women Voters of Oregon, NAACP of Eugene/Springfield, Independent Party of Oregon, and C. Normal Turrill (collectively, "PNP"), challenged Oregon's signature and submission deadline requirements for ballot initiatives.  The Oregon Constitution requires that ballot initiative proponents garner eight percent of the total votes cast in the last gubernatorial election, Or. Const. art. IV § 1(2)(c), and submit those signatures no less than four months before an election, *id.* §1(2)(e).

2

For the 2020 election cycle, initiative proponents would need to submit 149,360

verified signatures by July 2, 2020, to qualify for the November 2020 ballot.

Notably, Oregon law allows petition signatures to be gathered in-person or

electronically.  *See* Or. Rev. Stat. § 250.052(6).

Though PNP could have started as early as July 2018, it did not begin the

statutory approval process until late November 2019.  After a third-party challenge

to its ballot title, *see id.* § 250.085, PNP was approved to begin circulating its

petition on April 9, 2020.  Around that time, the COVID-19 pandemic had already

caused the Oregon Governor to issue executive orders mandating social distancing.

*See* Or. Exec. Order No. 20-12 (Mar. 23, 2020),

https://www.oregon.gov/gov/Documents/executive_orders/eo_20-12.pdf; Or. Exec.

Order No. 20-30 (June 30, 2020),

https://www.oregon.gov/gov/Documents/executive_orders/eo_20-30.pdf.  The

governor did not issue a stay-at-home order.  *See id.*

In May, a month after being approved for circulation, PNP began collecting

signatures electronically through its online portal and mailed 500,000 petitions to

voters directly.  By the July 2 deadline, PNP had collected 64,172 signatures, or 43

per cent of the required total.

Two days before the July deadline, PNP sought declaratory and injunctive

relief, claiming that the enforcement of the signature and deadline requirements as

applied violated the First Amendment.  The district court granted the injunction, ordering the state to either (1) put PNP's initiative on the ballot or (2) extend the submission deadline to August 17 (six weeks after the constitutional deadline) and lower the signature threshold to 58,789 (39 per cent of the required total).  Oregon chose the second option. On August 11, two days before oral argument, the Supreme Court stayed the district court's order pending its resolution of a petition for writ of certiorari.  *Clarno*, No. 20A21 (U.S. Aug. 11, 2020) (order granting application for stay).

## II

This case is currently moot or, at the very least, will become moot on September 3.  For a federal court to retain Article III jurisdiction, "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997) (internal citation omitted).  "Article III's 'case-or-controversy' requirement precludes federal courts from deciding 'questions that cannot affect the rights of litigants in the case before them.'"  *Protectmarriage.com*, 752 F.3d at 834 (quoting *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974)).

On September 3, the Oregon Secretary of State will lose its statutory authority to place initiatives on the ballot.  *See* Or. Rev. Stat. § 254.085.  Because any decision relating to the preliminary injunction "cannot affect the rights of

litigants" after September 3, *see Protectmarriage.com*, 752 F.3d at 834 (internal citation omitted), our courts will no longer have Article III jurisdiction over the case and must dismiss it as moot on that date. *Nome Eskimo Cmty. v. Babbit*, 67 F.3d 813, 815 (9th Cir. 1995) (underscoring once a case is moot, "the judicial branch loses its power to render a decision on the merits of the claim"); *see also Bogaert v. Land*, 543 F.3d 862, 864 (6th Cir. 2008) (holding appeal of a preliminary injunction that required placement of an issue on the ballot was moot once ballots were sent to printer).

But given the Supreme Court's recent stay of the preliminary injunction, we are left in somewhat of a quandary. We are not mandated to dismiss as constitutionally moot under Article III until the September 3 deadline. Yet the Supreme Court's stay almost certainly "dooms to mootness [PNP's] First Amendment claims[.]" *See Reclaim Idaho*, 591 U.S. ___, slip op. at 2 (Sotomayor, J., dissenting); *see also id.*, slip op. at 4 (Roberts, C.J., concurring) (noting the stay "may preclude this particular initiative from appearing on the ballot this November"). For a court to provide redress, this case would need to go through the panel, en banc, certiorari, and Supreme Court merits stages all before September 3—in two days.[1] The panel's decision to remand on the limited

---

[1] PNP at oral argument contended that the case is not constitutionally moot until September 17. Even assuming this is the correct date (which it is not, *see* Or. Rev.

question of mootness only decreases the likelihood of that timely redress. In short, Article III does not mandate dismissal until September 3, but delaying the inevitable is inconsistent with judicial economy and a waste of judicial resources.

I suggest a third option: dismiss the preliminary injunction as prudentially moot. The doctrine of mootness is comprised of both constitutional *and* prudential considerations. *See Honig v. Doe*, 484 U.S. 305, 330–31 (1988) (Rehnquist, C.J., concurring) (discussing the history of the mootness doctrine grounded in prudence rather than Article III). Indeed, the very existence of exceptions to mootness only underscores this point. *See, e.g.*, *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498 (1911) (creating the "capable of repetition, yet evading review" exception to mootness though no such exception exists under Article III). Though this circuit has addressed the doctrine of prudential mootness rarely, *see, e.g.*, *Hunt v. Imperial Merch. Servs., Inc.*, 560 F.3d 1137 (9th Cir. 2009); *Deutsche Bank Nat'l Tr. Co. v. FDIC*, 744 F.3d 1124 (9th Cir. 2014); *Maldonado v. Lynch*, 786 F.3d 1155 (9th Cir. 2015), and applied it in just one case, *see Deutsche Bank*, 744 F.3d at 1135–38, the principles undergirding this doctrine strongly counsel in favor of its application in this case.

---

Stat. § 254.085), two additional weeks do not make it any more likely that this case will complete a full appellate lifecycle sufficient to provide a remedy.

In our government of separated powers, it is a constitutional maxim that a greater power includes a lesser one.  *See U.S. v. Hudson*, 11 U.S. (7 Cranch) 32, 33 (1812) (finding Congress's power to create federal courts includes the lesser power to restrict jurisdiction); *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2211 (2020) (finding the President's executive power "generally includes the ability to supervise and remove the agents who wield executive power in his stead.").  For federal courts, the greater power to exercise jurisdiction includes the lesser power to abstain from exercising that jurisdiction in limited circumstances.  *See generally Rucho v. Common Cause*, 139 S. Ct. 2484 (2019) (political question doctrine); *Ashwander v. TVA*, 297 U.S. 288 (1936) (principle of constitutional avoidance); *R.R. Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941) (*Pullman* abstention); *Younger v. Harris*, 401 U.S. 37 (1971) (*Younger* abstention); *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49 (2013) (forum non conveniens).

In a similar vein, we have has recognized that a court may "dismiss an appeal not technically moot if circumstances have changed since the beginning of litigation that forestall any occasion for meaningful relief[.]"  *Deutsche Bank*, 744 F.3d at 1135 (internal citation omitted).  Nearly every one of our sister circuits

7

have adopted this doctrine in some form,[2] and the Tenth Circuit in particular found

this doctrine applicable in the election law context.  *See Am. Constitutional Law*

*Found., Inc. v. Davidson*, No. 99-1142, 2000 WL 488460, at *2 (10th Cir. Apr. 26,

2000) (unpublished) (recognizing prudential mootness in the ballot initiative

context and dismissing the case as the substance of the case had already been

resolved by state courts, leaving "nothing more for the federal courts to do in this

respect"); *see also Citizen Ctr. v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014)

(recognizing the authority to dismiss a case as prudentially moot in the ballot

tracing context, but choosing not to as the injury could still be remedied).

That is not to say that this doctrine should be applied broadly.  Indeed,

prudential mootness only applies "[w]here it is *so unlikely* that the court's grant of

[a] remedy will actually relieve the injury[.]"  *MBIA Ins. Corp. v. FDIC*, 708 F.3d

234, 245 (D.C. Cir. 2013) (alteration adopted) (emphasis added) (internal citations

omitted).  We have similarly limited prudential mootness.  In *Hunt v. Imperial*

*Merchant Services*, we did not dismiss a class action case as prudentially moot

---

[2] *See Allende v. Shultz*, 845 F.2d 1111 (1st Cir. 1988); *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005); *Nordhoff Invs., Inc. v. Zenith Elecs. Corp.*, 258 F.3d 180 (3d Cir. 2001); *In re U.S. Airways Grp., Inc.*, 369 F.3d 806 (4th Cir. 2004); *In re Blast Energy Servs.*, Inc., 593 F.3d 418 (5th Cir. 2010); *In re City of Detroit*, 838 F.3d 792 (6th Cir. 2016); *S. Utah Wilderness All. v. Smith*, 110 F.3d 724 (10th Cir. 1997); *Bennett v. Jefferson Cty.*, 899 F.3d 1240 (11th Cir. 2018); *Chamber of Commerce v. U.S. Dep't of Energy,* 627 F.2d 289 (D.C. Cir. 1980).

because the issue was one that "often arises in district courts but typically evades appellate review." 560 F.3d at 1142. In other words, an exception to mootness applied. In *Maldonado*, sitting en banc, we declined to dismiss an immigration case on prudential mootness grounds because the plaintiff "*will obtain* meaningful relief" if the panel ruled in his favor. 786 F.3d at 1161 n.5 (emphasis added). Furthermore, we noted that prudential mootness is not a *per se* consideration, *see id.*, meaning the court may choose not to apply it even if it makes sense to do so. Put together, these cases illustrate just how limited this doctrine is: only in rare situations where no exception to mootness applies or when it is so unlikely that a party will obtain meaningful relief can a court dismiss a case as prudentially moot.

This case falls within that limited set of circumstances. Because of the Supreme Court's stay, "circumstances have changed . . . that forestall any occasion for meaningful relief[.]" *See Deutsche Bank*, 744 F.3d at 1135 (internal citation omitted). It is practically impossible that this case will succeed in completing a full litigation lifecycle before the September deadline, making it "so unlikely" that anything our courts do will "actually relieve the injury[.]" *See MBIA*, 708 F.3d at 245 (internal citation omitted). Moreover, *Hunt* and *Maldonado* are inapposite: PNP "will [*not*] obtain meaningful relief," and no exception to mootness applies. *See* Part III, *infra*. I recognize my colleagues' hesitancy in applying this doctrine when we have applied it so infrequently, but I would vacate the district court order

9

as prudentially moot and remand with instructions to dismiss the preliminary injunction claim—there is simply no meaningful injunctive relief that we can provide given the Supreme Court's stay.

## III

Even if this case is not dismissed as prudentially moot, it will become moot under Article III on September 3. And it does not qualify as a "capable of repetition, yet evading review" exception to mootness. "Because mootness concerns whether we have power to hear a case, we apply the 'capable of repetition, yet evading review' exception sparingly, and only in 'exceptional situations.'" *Protectmarriage.com*, 752 F.3d at 836–37. An action qualifies as an "exceptional situation" under this exception where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Davis v. FEC*, 554 U.S. 724, 735 (quoting *Wis. Right to Life*, 551 U.S. at 462). Though the first prong may be met in this case, the second is certainly not.

## A

As to the first prong, "the injury suffered must be so *inherently* limited in duration that the action will become moot before the completion of appellate review." *In re Di Giorgio*, 134 F.3d 971, 975 (9th Cir. 1998) (emphasis added).

10

Courts have repeatedly held that challenges to election laws, and ballot initiative requirements specifically, are often inherently limited in duration sufficient to satisfy the first prong. *See, e.g.*, *Meyer v. Grant*, 486 U.S. 414, 417 n.2 (1988) (recognizing the exception in the ballot initiative context); *Citizens for Clean Gov't v. City of San Diego*, 474 F.3d 647, 650 (9th Cir. 2007) (same).

There is some question, however, whether the claim in this case is so inherently limited in duration that any similar claim would face "imminent mootness," making it capable of being repeatedly and "irrevocably lost" without vindication. *See Singleton v. Wulff*, 428 U.S. 106, 117 (1976). Here, PNP's injury and First Amendment claims revolve around the inability to meet a deadline. I do not doubt PNP's diligence in gathering signatures, especially during this pandemic, but I cannot ignore the fact that its inability to meet the deadline was "attributable at least in part," *see Reclaim Idaho*, 591 U.S. ___, slip op. at 4 (Roberts, C.J., concurring), to its own decision to wait until November 2019 to begin the process. A political organization that began even a few months earlier may not have had the same deadline-related claim, making it questionable whether PNP's claim is actually "inherently limited" by the length of Oregon's election cycles or that a similar claim would face "imminent mootness" as well. As we underscored in *Protectmarriage.com*, "the exception was designed to apply to situations where the type of injury involved *inherently* precludes judicial review, not to situations where

11

review is precluded as a practical matter."  752 F.3d at 837 (alteration adopted) (emphasis added) (internal citation omitted).

**B**

Even if PNP can satisfy this first prong, it cannot satisfy the second.  It is not enough to demonstrate that it *might* be subject to the same injury again.  To satisfy this prong, PNP would need to demonstrate a "reasonable expectation" or "demonstrated probability that the same controversy will recur involving the same complaining party."  *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (internal citation omitted).  It cannot meet that burden.

On remand, the panel has asked the district court to develop further evidentiary findings as to whether PNP's claim is moot and whether an exception applies.  But I am not sure what evidence can be developed.  Given how COVID-19 has disrupted our daily lives and the uncertainty that persists, we would all love to know whether this pandemic will continue until July 2022.  But even in its own brief, PNP frequently pointed to "unique circumstances of the Pandemic and related health orders" causing this controversy.  *See* Appl. Br. 4, 17, 23.  To put it mildly, if the best and brightest scientific minds combating this pandemic cannot predict what the future will hold, I am reticent to assume that the district court could offer any revelation of what may be reasonably expected.  PNP simply cannot develop any evidentiary support on remand to meet the second *Davis* prong.

12

Nor need it do so.  Any relief yet to be had is far better sought through declaratory judgement action than through preliminary injunction.

Even if PNP could demonstrate that the pandemic *may* extend through the next election cycle, that is not enough.  A possibility, even a colorable one, is not enough to rise to the level of "demonstrated probability."  *See Murphy*, 455 U.S. at 482.  True, the exception does not "[r]equir[e] repetition of every 'legally relevant' characteristic of an as-applied challenge—down to the last detail" since the circumstances must only be "materially similar."  *Wis. Right to Life,* 551 U.S. at 463.  However, at a minimum, the "same controversy" must occur again.  *See Murphy*, 455 U.S. at 482; *Lyons*, 461 U.S. at 109 (finding a reasonable expectation when a party "will again be subjected to the alleged illegality").  Here, PNP's challenge is integrally tied to its inability to meet a deadline.  Thus, to demonstrate a controversy "capable of repetition," PNP would need to show that similar circumstances in the 2022 election would again inhibit it from meeting the July 2022 deadline.

Theoretically, PNP could begin the process for the 2022 election today[3] and be subject to the same pandemic, executive orders, and executive enforcement. But unless PNP could show that it would similarly be unable to meet the July 2022 signature deadline and not be granted an accommodation, the second *Davis* prong

_____

[3] The initiative process for the November 2022 election began on July 6, 2020.

will not be satisfied.  *Contra Wis. Right to Life*, 551 U.S. at 463–64 (finding a

reasonable expectation "where WRTL [already] sought another preliminary

injunction" for the next election cycle and "there is no reason to believe that the

FEC will refrain from prosecuting violations of BCRA") (internal quotation marks

and citation omitted)); *Davis*, 554 U.S. at 736 (finding a reasonable expectation

because "the FEC conceded . . . that Davis'[s] § 319(a) claim would be capable of

repetition"); *Citizens for Clean Gov't*, 474 F.3d at 650 (finding a reasonable

expectation because the plaintiffs would "be subject to the same contribution

limits").  If anything, by PNP starting today and beginning 18 months earlier than

it did in the 2020 election cycle, it is significantly *less* probable that this

controversy will arise again.  This is particularly true where PNP already found

overwhelming success collecting signatures electronically during this election

cycle amidst the pandemic.

## C

Assuming the district court on remand finds that this case qualifies as an

exception, an even larger problem becomes clear: what remedy could the district

court provide in the preliminary injunction context?  At least in a declaratory

judgment action, the district court (assuming an exception to mootness applies)

could analyze alleged violations of legal rights.  *See* Declaratory Judgment Act, 28

U.S.C. § 2201(a) (giving federal courts jurisdiction to "declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought"). But in the preliminary injunction context, the court could only address a "*likelihood* of success on the merits," balancing that likelihood with equities that no longer exist in the real world. *See Winter v. NRDC*, 555 U.S. 7, 24 (2008) (emphasis added). There is simply no remedy that a court can provide in the preliminary injunction context, even if an exception to mootness applies.[4]

For this reason, no precedent exists recognizing an otherwise moot preliminary injunction as "capable of repetition, yet evading review." This makes sense. Preliminary injunctions are by definition an exercise of a court's equitable power and thus are inherently limited to the equitable remedies a court can provide. For a case to qualify as an exception to mootness, at the very least there must be some remedy to be had; otherwise, a court would be exceeding its power under Article III's case-or-controversy limitation. Thus, to find a case somehow excepted from mootness when it is inherently dependent upon equitable relief that is no longer available is to call for nothing short of an impermissible advisory opinion. Put simply, preliminary injunctions providing specific relief (especially

---

[4] To the extent PNP seeks relief from impending threats they may face in *future* elections, that claim is not ripe. Without a "factual record of an actual or imminent application" of Oregon law that will likely prevent PNP from placing its initiative on the next election's ballot, such allegations would present "no ripe controversy." *See Renne v. Geary*, 501 U.S. 312, 321–22 (1991).

in the as-applied context) cannot qualify as an exception to mootness absent a separate legal remedy to preserve the controversy. Courts have repeatedly recognized this jurisprudential truism.

For instance, in *Southern Pacific Terminal*, the first case recognizing the "capable of repetition, yet evading review" exception, the Court distinguished its case from past cases where "the acts sought to be enjoined had been completely executed, and there was nothing that the judgment of the court, if the suits had been entertained, could have affected." 219 U.S. at 514–15. Though past cases were dismissed as moot for want of redressability, *Southern Pacific Terminal* involved "*rights* determined by the Commission without a chance of redress." *Id.* at 515 (emphasis added). Because "[t]he judgment of the court [was] sought upon the *question of the legality* of the [ICC orders]," the redressability of legal rights preserved the justiciability of the plaintiffs' suit. *Id.* (emphasis added).

This principle held true in *Moore v. Ogilvie*, 394 U.S. 814, 815 (1969), where candidates challenged an Illinois law, seeking declaratory and injunctive relief. Illinois urged dismissal on mootness grounds, arguing that "since the November 5, 1968, election has been held, there is no possibility of granting any relief to appellants[.]" *Id.* at 816. The Court rejected this argument, not because equitable relief could extend beyond the election deadline, but because "the [legal] burden . . . placed on the nomination of candidates for statewide

16

offices . . . remains and controls future elections[.]" *Id.* Again, the availability of legal relief allowed the case to exist beyond the extinguishment of equitable remedies.

Similarly, in *Wisconsin Right to Life*, the Supreme Court found the case "capable of repetition, yet evading review" not in analyzing WRTL's preliminary injunction, but in "consider[ing] the merits of WRTL's as-applied challenge in the first instance." 551 U.S. at 460. The Court in *Davis* also found an exception to mootness when analyzing a facial challenge seeking *declaratory* relief even though Davis had also sought to enjoin the Federal Election Commission during the 2006 election. 554 U.S. at 731–32, 744–45. In each case, the availably of legal, not equitable, relief allowed the cases to extend beyond election deadlines. *See Moore*, 394 U.S. at 818–19 (overruling precedent); *Wisc. Right To Life*, 551 U.S. at 460–61 (finding the relevant statutory provision unconstitutional); *Davis*, 554 U.S. at 744–45 (same); *Meyer*, 486 U.S. at 428 (same).

Put simply, "[i]t has long been settled that we have no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law *which cannot affect* the matter in issue in the case before us." *Schneider v. Chertoff*, 450 F.3d 944, 959 (9th Cir. 2006) (emphasis added) (internal citation omitted). For injunctive relief specifically, once a court's ability to provide equitable relief has passed, the case cannot survive mootness without

contravening Article III.  Because on remand the district court "cannot affect the matter in issue in the case before [it]," *id.*, the panel asks for nothing short of an impermissible advisory opinion.

*    *    *

As the only issue raised in this appeal is a claim for injunctive relief pertaining  to the 2020 election, and as PNP cannot satisfy the second *Davis* prong, this case cannot qualify as an exception to mootness. There is no conceivable situation in which a federal court could maintain jurisdiction over this action after September 3 without contravening Article III.

## IV

One final thought.  Though we do not reach the merits of this case and the potential First Amendment implications, this court may need to revisit its jurisprudence regarding ballot initiatives en banc in a future case.  The Supreme Court recently stayed a district court's order restructuring signature and deadline requirements for a ballot initiative in Idaho.  *See generally Reclaim Idaho*, 591 U.S. ___ (per curiam).  Concurring in that grant, Chief Justice Roberts along with three other members of the Court identified a circuit split on this issue and signaled that the Ninth Circuit was on the wrong side.  *Id.*, slip op. at 2–3 (Roberts, C.J., concurring).  Siding with other circuits, the Chief Justice criticized our test in *Angle v. Miller* for "require[ing] scrutiny of the interests of the State whenever a

neutral, procedural regulation inhibits a person's ability to place an initiative on the ballot." *Id.* at 2.

I highlight the Chief Justice's remarks to encourage future evaluation of the legal test we adopted in *Angle*. First Amendment rights should be guarded vigorously against state encroachment. There is no question that "the First Amendment requires us to err on the side of protecting political speech rather than suppressing it." *Wis. Right To Life*, 551 U.S. at 457. But to err by infringing upon a state's "considerable leeway to protect the integrity and reliability of the initiative process," *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 191 (1999), when no speech rights have been severely burdened, *see Burdick v. Takushi*, 504 U.S. 428, 428 (1992), extends First Amendment protections far beyond their constitutional reach. The First Amendment has never required strict scrutiny in "the application of only the most typical sort of neutral regulations on ballot access." *Reclaim Idaho*, 591 U.S. ___, slip op. at 3 (Roberts, C.J., concurring).

The district court in this case applied *Angle*, finding that Oregon's signature and deadline requirements violate the First Amendment, even though those requirements do not implicate any speech interests facially and do not severely burden speech implicitly. Instead, the court's analysis turned on how "reasonably diligent" PNP had been throughout the process and whether the requirements

19

impeded PNP from getting its initiative on the ballot.  *People Not Politicians Or. v. Clarno*, 2020 WL 3960440, at *4–6 (D. Or. July 13, 2020).  A district court in a similar case recently applied *Angle* in the same way.  *See generally Reclaim Idaho v. Little*, 2020 WL 3490216 (D. Idaho June 26, 2020).

This seems to contravene core First Amendment principles.  Although "[e]lection laws will invariably impose some burden upon individual voters," "the mere fact that a State system creates barriers . . . does not of itself compel close scrutiny."  *Burdick*, 504 U.S. at 433 (alteration adopted) (internal citation omitted).  Moreover, First Amendment protection has never turned on the diligence of the speaker.  If *Angle* truly does require strict scrutiny in situations where the First Amendment is not implicated and if it allows for speech protections to turn entirely on the reasonable diligence of the speaker, *Angle* must be revisited and brought back in line with fundamental First Amendment principles.

## V

For the above reasons, I respectfully dissent.  As the case is now prudentially moot, I would vacate the district court's order and remand with instructions to dismiss the preliminary injunction claim.  Otherwise, on September 3, I would similarly vacate and remand as no exception to mootness applies.

**United States Court of Appeals for the Ninth Circuit**

**Office of the Clerk**
95 Seventh Street
San Francisco, CA 94103

**Information Regarding Judgment and Post-Judgment Proceedings**

**Judgment**
- This Court has filed and entered the attached judgment in your case. Fed. R. App. P. 36. Please note the filed date on the attached decision because all of the dates described below run from that date, not from the date you receive this notice.

**Mandate (Fed. R. App. P. 41; 9th Cir. R. 41-1 & -2)**
- The mandate will issue 7 days after the expiration of the time for filing a petition for rehearing or 7 days from the denial of a petition for rehearing, unless the Court directs otherwise. To file a motion to stay the mandate, file it electronically via the appellate ECF system or, if you are a pro se litigant or an attorney with an exemption from using appellate ECF, file one original motion on paper.

**Petition for Panel Rehearing  (Fed. R. App. P. 40; 9th Cir. R. 40-1)**
**Petition for Rehearing En Banc (Fed. R. App. P. 35; 9th Cir. R. 35-1 to -3)**

**(1)    A.    Purpose (Panel Rehearing):**
- A party should seek panel rehearing only if one or more of the following grounds exist:
  - ► A material point of fact or law was overlooked in the decision;
  - ► A change in the law occurred after the case was submitted which appears to have been overlooked by the panel; or
  - ► An apparent conflict with another decision of the Court was not addressed in the opinion.
- Do not file a petition for panel rehearing merely to reargue the case.

**B.    Purpose (Rehearing En Banc)**
- A party should seek en banc rehearing only if one or more of the following grounds exist:

> ▶     Consideration by the full Court is necessary to secure or maintain uniformity of the Court's decisions; or

> ▶     The proceeding involves a question of exceptional importance; or

> ▶     The opinion directly conflicts with an existing opinion by another court of appeals or the Supreme Court and substantially affects a rule of national application in which there is an overriding need for national uniformity.

**(2)    Deadlines for Filing:**

- A petition for rehearing may be filed within 14 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the United States or an agency or officer thereof is a party in a civil case, the time for filing a petition for rehearing is 45 days after entry of judgment.  Fed. R. App. P. 40(a)(1).
- If the mandate has issued, the petition for rehearing should be accompanied by a motion to recall the mandate.
- *See* Advisory Note to 9th Cir. R. 40-1 (petitions must be received on the due date).
- An order to publish a previously unpublished memorandum disposition extends the time to file a petition for rehearing to 14 days after the date of the order of publication or, in all civil cases in which the United States or an agency or officer thereof is a party, 45 days after the date of the order of publication.  9th Cir. R. 40-2.

**(3)    Statement of Counsel**

- A petition should contain an introduction stating that, in counsel's judgment, one or more of the situations described in the "purpose" section above exist.  The points to be raised must be stated clearly.

**(4)    Form & Number of Copies (9th Cir. R. 40-1; Fed. R. App. P. 32(c)(2))**

- The petition shall not exceed 15 pages unless it complies with the alternative length limitations of 4,200 words or 390 lines of text.
- The petition must be accompanied by a copy of the panel's decision being challenged.
- An answer, when ordered by the Court, shall comply with the same length limitations as the petition.
- If a pro se litigant elects to file a form brief pursuant to Circuit Rule 28-1, a petition for panel rehearing or for rehearing en banc need not comply with Fed. R. App. P. 32.

- The petition or answer must be accompanied by a Certificate of Compliance found at Form 11, available on our website at www.ca9.uscourts.gov under *Forms.*
- You may file a petition electronically via the appellate ECF system. No paper copies are required unless the Court orders otherwise. If you are a pro se litigant or an attorney exempted from using the appellate ECF system, file one original petition on paper. No additional paper copies are required unless the Court orders otherwise.

**Bill of Costs (Fed. R. App. P. 39, 9th Cir. R. 39-1)**
- The Bill of Costs must be filed within 14 days after entry of judgment.
- See Form 10 for additional information, available on our website at www.ca9.uscourts.gov under *Forms.*

**Attorneys Fees**
- Ninth Circuit Rule 39-1 describes the content and due dates for attorneys fees applications.
- All relevant forms are available on our website at www.ca9.uscourts.gov under *Forms* or by telephoning (415) 355-7806.

**Petition for a Writ of Certiorari**
- Please refer to the Rules of the United States Supreme Court at www.supremecourt.gov

**Counsel Listing in Published Opinions**
- Please check counsel listing on the attached decision.
- If there are any errors in a published <u>opinion</u>, please send a letter **in writing within 10 days** to:
  - ► Thomson Reuters; 610 Opperman Drive; PO Box 64526; Eagan, MN 55123 (Attn: Jean Green, Senior Publications Coordinator);
  - ► and electronically file a copy of the letter via the appellate ECF system by using "File Correspondence to Court," or if you are an attorney exempted from using the appellate ECF system, mail the Court one copy of the letter.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 10. Bill of Costs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form10instructions.pdf

**9th Cir. Case Number(s)**

**Case Name**

The Clerk is requested to award costs to (*party name(s)*):

I swear under penalty of perjury that the copies for which costs are requested were actually and necessarily produced, and that the requested costs were actually expended.

**Signature**                          **Date**

*(use "*s/[typed name]*" to sign electronically-filed documents)*

| COST TAXABLE | REQUESTED *(each column must be completed)* | | | |
|---|---|---|---|---|
| DOCUMENTS / FEE PAID | No. of Copies | Pages per Copy | Cost per Page | TOTAL COST |
| Excerpts of Record* | | | $ | $ |
| Principal Brief(s) *(Opening Brief; Answering Brief; 1st, 2nd , and/or 3rd Brief on Cross-Appeal; Intervenor Brief)* | | | $ | $ |
| Reply Brief / Cross-Appeal Reply Brief | | | $ | $ |
| Supplemental Brief(s) | | | $ | $ |
| Petition for Review Docket Fee / Petition for Writ of Mandamus Docket Fee | | | | $ |
| TOTAL: | | | | $ |

***Example:*** *Calculate 4 copies of 3 volumes of excerpts of record that total 500 pages [Vol. 1 (10 pgs.) + Vol. 2 (250 pgs.) + Vol. 3 (240 pgs.)] as:*
*No. of Copies: 4; Pages per Copy: 500; Cost per Page: $.10 (or actual cost IF less than $.10);*
*TOTAL: 4 x 500 x $.10 = $200.*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 10**                                                    *Rev. 12/01/2018*